Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GILBERT IRVIN,<br><br>　　Plaintiff,<br><br>　　v.<br><br>HEALTHCARE REALTY TRUST INCORPORATED, JOHN KNOX SINGLETON, TODD J. MEREDITH, JOHN V. ABBOTT, NANCY H. AGEE, EDWARD H. BRAMAN, AJAY GUPTA, JAMES J. KILROY, PETER F. LYLE, and CHRISTANN M. VASQUEZ,<br><br>　　Defendants. | Case No:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Gilbert Irvin ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1.　This is an action against Healthcare Realty Trust Incorporated ("Healthcare Realty," "HR," or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of

1

1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") of Healthcare Realty and Healthcare Trust of America, Inc. ("Healthcare Trust").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, and the alleged misstatements entered and the subsequent damages occurred in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Healthcare Realty common stock.

7. Defendant Healthcare Realty is a real estate investment trust that integrates owning, managing, financing and developing income-producing real estate properties associated

primarily with the delivery of outpatient healthcare services throughout the United States. The Company is incorporated in Maryland. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "HR."

8. Defendant John Knox Singleton ("Singleton") is a director of the Company.

9. Defendant Todd J. Meredith ("Meredith") is President, Chief Executive Officer, and a director of the Company.

10. Defendant John V. Abbott ("Abbott") is a director of the Company.

11. Defendant Nancy H. Agee ("Agee") is a director of the Company.

12. Defendant Edward H. Braman ("Braman") is a director of the Company.

13. Defendant Ajay Gupta ("Gupta") is a director of the Company.

14. Defendant James J. Kilroy ("Kilroy") is a director of the Company.

15. Defendant Peter F. Lyle ("Lyle") is a director of the Company.

16. Defendant Christann M. Vasquez ("Vasquez") is a director of the Company.

17. Defendants Singleton, Meredith, Abbott, Agee, Braman, Gupta, Kilroy, Lyle, and Vasquez are collectively referred to herein as the "Individual Defendants."

18. Defendants Healthcare Realty and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

19. On February 28, 2022, Healthcare Realty and Healthcare Trust announced that they had agreed to enter into a strategic business combination. Upon closing of the Proposed Transaction, each share of Healthcare Realty common stock will be exchanged for one share of Healthcare Trust common stock, at a fixed ratio. The press release announcing the Proposed

3

Transaction states, in pertinent part:

### Healthcare Realty and Healthcare Trust of America Enter Into $18 Billion Strategic Combination

February 28, 2022 06:45 ET | Source: Healthcare Realty Trust Incorporated

Creates Preeminent, High Quality MOB REIT

Led by Existing Healthcare Realty Executive Team and Chairman

Healthcare Realty Name and Ticker Symbol (NYSE: HR)

Expected to be Accretive with Material Cost Synergies and Operational Upside

Conference Call to be held at 8:30 AM E.T.

NASHVILLE, Tenn. and SCOTTSDALE, Ariz., Feb. 28, 2022 (GLOBE NEWSWIRE) -- Healthcare Realty Trust Incorporated (NYSE:HR) ("Healthcare Realty" or "HR") and Healthcare Trust of America, Inc. (NYSE: HTA) ("Healthcare Trust of America" or "HTA") today announced that they have agreed to enter into a strategic business combination. HTA shareholders will receive a total implied value of $35.08 per share comprised of a special cash dividend of $4.82 per share and a transaction exchange ratio of 1:1 based on HR's unaffected price of $30.26 on February 24, 2022. This transaction brings together two of the largest owners of medical office buildings, creating the preeminent, pure-play medical office building REIT and positions the combined company (the "Company") to create long-term shareholder value. The Company will have a pro forma equity market capitalization of approximately $11.6 billion and a total enterprise value of $17.6 billion based on the implied values at market close on February 24, 2022.

**Leadership and Organization**

The Company will be led by the Healthcare Realty management team, with Todd Meredith as President and Chief Executive Officer and Kris Douglas as Executive Vice President and Chief Financial Officer. Upon completion of the transaction, the new Company will continue to operate with the Healthcare Realty name and trade on the NYSE under the ticker symbol HR.

The Company will have a highly qualified, diverse Board of Directors comprised of nine existing directors of Healthcare Realty, three members of the Healthcare Trust of America Board, and one new member to be mutually agreed upon by the existing HR and HTA directors and appointed prior to closing of the transaction. Knox Singleton, Chairman of the Healthcare Realty Board, will be Chairman of the Company and Brad Blair, Chairman of the Healthcare Trust of America Board, will be appointed Vice Chairman.

Upon completion of the transaction, the Company's headquarters will be based in Nashville, with additional corporate offices in Scottsdale and Charleston. The Company will implement a detailed integration process to ensure continuity for tenants, employees and all stakeholders.

*   *   *

**Transaction Structure**

At closing, each share of HR common stock will be exchanged for one share of HTA common stock, at a fixed ratio. In addition, a special cash dividend of $4.82 per share will be distributed to HTA shareholders. Taken together and based on HR's share price at the close of markets on February 24, 2022, HTA shareholders will realize an implied value of $35.08 per HTA share, representing an 18.2% premium to HTA's share price at the close of markets on February 24, 2022. This combination is structured as a reverse merger whereby Healthcare Trust of America will be the corporate successor and the Company's name will continue as Healthcare Realty Trust Incorporated. Pro forma for the transaction HR and HTA shareholders will own 39% and 61% of the Company, respectively.

The special cash dividend of approximately $1.1 billion will be financed through joint venture transactions and asset sales. JPMorgan Chase Bank, N.A. has provided a commitment letter to Healthcare Trust of America for a $1.7 billion debt financing for the transaction upon the terms and conditions set forth in the letter.

The transaction is expected to close in the third quarter of 2022, subject to customary closing conditions, including the approval of both Healthcare Realty and Healthcare Trust of America shareholders. The transaction was unanimously approved by the Board of Directors of HR and the Board of Directors of HTA.

**Advisors**

Citigroup Global Markets Inc. is serving as lead financial advisor, Scotiabank is serving as financial advisor, and Hunton Andrews Kurth LLP is acting as legal advisor to Healthcare Realty. J.P. Morgan Securities LLC is acting as exclusive financial advisor and McDermott Will & Emery LLP is acting as legal advisor to Healthcare Trust of America.

*   *   *

**About Healthcare Realty**

Healthcare Realty Trust Incorporated (NYSE: HR) is a real estate investment trust that integrates owning, managing, financing and developing income-producing real estate properties associated primarily with the delivery of outpatient healthcare

services throughout the United States. As of December 31, 2021, the Company was invested in 258 real estate properties in 23 states totaling 17.9 million square feet and had an enterprise value of approximately $6.6 billion, defined as equity market capitalization plus the principal amount of debt less cash. The Company provided leasing and property management services to 14.3 million square feet nationwide.

**About Healthcare Trust of America**

Healthcare Trust of America, Inc. (NYSE: HTA) is the largest dedicated owner and operator of medical office buildings in the United States, with assets comprising approximately 25.8 million square feet of GLA, with $7.7 billion invested primarily in medical office buildings as of September 30, 2021. HTA provides real estate infrastructure for the integrated delivery of healthcare services in highly-desirable locations. Investments are targeted to build critical mass in 20 to 25 leading gateway markets that generally have leading university and medical institutions, which translates to superior demographics, high-quality graduates, intellectual talent and job growth. The strategic markets HTA invests in support a strong, long-term demand for quality medical office space. HTA utilizes an integrated asset management platform consisting of on-site leasing, property management, engineering and building services, and development capabilities to create complete, state of the art facilities in each market. HTA believes this drives efficiencies, strong tenant and health system relationships, and strategic partnerships that result in high levels of tenant retention, rental growth and long- term value creation. Headquartered in Scottsdale, Arizona, HTA has developed a national brand with dedicated relationships at the local level.

20. On May 2, 2022, Defendants caused to be filed with the SEC a Form S-4 Registration Statement (the "Registration Statement") under the Securities Act of 1933 in connection with the Proposed Transaction.

**B. The Registration Statement Contains Materially False and Misleading Statements and Omissions**

21. The Registration Statement, which recommends that Healthcare Realty shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Healthcare Realty's and Healthcare Trust's financial projections; (ii) the financial analyses performed by the Company's financial advisor, Citigroup Global Markets Inc. ("Citigroup" or "Citi"), in connection with its fairness opinion; (iii) potential conflicts of interest involving Citigroup and Scotia Capital USA Inc. ("Scotia" or "Scotiabank"), the

6

Company's additional financial advisor; and (iv) potential conflicts of interest involving Company insiders.

22. The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) HR's Reasons for the Merger; Recommendation of the HR Board; (ii) Opinion of HR Financial Advisor; and (iii) Certain Unaudited Prospective Financial Information.

23. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Healthcare Realty shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

1. **Material Omissions Concerning Healthcare Realty's and Healthcare Trust's Financial Projections**

24. The Registration Statement omits material information concerning Healthcare Realty's and Healthcare Trust's financial projections.

25. With respect to Healthcare Realty's and Healthcare Trust's financial projections, the Registration Statement fails to disclose: (1) all line items underlying the projections; and (2) a reconciliation of all non-GAAP to GAAP metrics.

26. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of Healthcare Realty and the combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the

Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

27. When a company discloses non-GAAP financial metrics in a Registration Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

28. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Citigroup's Analyses

29. In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by Citigroup.

30. With respect to Citigroup's "*Selected Public Companies Analyses*," the Registration Statement fails to disclose the individual multiples and financial metrics of each

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited May 13, 2022) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

company Citigroup observed in its analyses.

31. The Registration Statement fails to disclose the following concerning Citigroup's "*Discounted Cash Flow Analyses*" of Healthcare Realty and Healthcare Trust: (1) the respective terminal values of the Company and Healthcare Trust; and (2) the individual inputs and assumptions underlying the exit cap rates, growth rates, and discount rates used in the analyses.

32. The Registration Statement fails to disclose the following concerning Citigroup's analyses of analysts' price targets for Healthcare Realty common stock and Healthcare Trust common stock, and analysts' net asset value per share estimates for Healthcare Realty common stock and Healthcare Trust common stock: (1) the individual price targets and net asset value per share estimates observed by Citigroup in its analyses; and (2) the sources thereof.

33. The Registration Statement fails to disclose the following concerning Citigroup's illustrative discounted cash flow analysis of the pro forma combined company: (1) the potential pro forma implications of the Proposed Transaction; and (2) the individual inputs and assumptions underlying the exit cap rates, growth rates, and discount rates used in the analysis.

34. The Registration Statement provides that, in arriving at its opinion, Citigroup "evaluated certain potential pro forma financial effects of the Merger on [the Company.]" The Registration Statement, however, fails to disclose the potential pro forma financial effects of the Proposed Transaction on Healthcare Realty.

35. The valuation methods, underlying assumptions, and key inputs used by Citigroup in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of Citigroup's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses.

36. Without the information described above, the Company's shareholders are unable

to fully understand Citigroup's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Citigroup and Scotia

37. The Registration Statement omits material information concerning potential conflicts of interest involving Citigroup and Scotia.

38. The Registration Statement fails to disclose the timing and nature of the past services that Citigroup, Scotia, and/or their affiliates provided to Healthcare Realty, Healthcare Trust, and/or their affiliates, including the amount of compensation Citigroup and Scotia, respectively, received or expect to receive for providing each service within the past two years.

39. The Registration Statement provides that, "[a]t the request of HR, Citi or one of its affiliates may provide or participate in financings undertaken by prospective counterparties relating to joint ventures or sales of assets of HR and/or the Company entered into in contemplation of the Merger, for which services Citi or such affiliate would expect to receive compensation."

40. The Registration Statement further provides that, "[a]t the request of HR, Scotiabank or one of its affiliates may provide or participate in financings undertaken by counterparties relating to joint ventures or sales of assets of HR or the Company entered into in contemplation of the Merger, for which services Scotiabank or such entity would expect to receive compensation."

41. The Registration Statement, however, fails to disclose the amount of compensation Citigroup and Scotia received or expect to receive for providing such financing services. *See Ortsman v. Green*, 2007 WL 702475, at *1-2 (Del. Ch. Feb. 28, 2007) (ordering expedited

discovery where plaintiff alleged "colorable disclosure claims" concerning omission of information relating to financial advisors' conflicted roles in the deal having attempted to provide financing to buyers, as well as failing to disclose amount of fees received by advisor from the company, buyer, and members of buyer group).

42.     The Registration Statement also fails to disclose the financial analyses performed by Scotia. This must be disclosed as, during the sales process, the Board reviewed Scotia's financial analyses and relied upon them in connection with its recommendation that Company shareholders approve the Proposed Transaction.

43.     Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

44.     The omission of the above-referenced information renders the Registration Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

45.     The Registration Statement omits material information concerning potential conflicts of interest involving Company insiders.

46.     The Registration Statement fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

47. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

48. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

49. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

51. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

52. The false and misleading statements and omissions in the Registration Statement

are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

53. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

54. Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

55. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

57. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public

statements issued by the Company which were or had become materially false or misleading.

59. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

59. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

60. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

61. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: May 13, 2022        Respectfully submitted,

              **HALPER SADEH LLP**

              By: /s/ Daniel Sadeh
              Daniel Sadeh, Esq.
              Zachary Halper, Esq. (to be admitted *pro hac vice*)
              667 Madison Avenue, 5th Floor
              New York, NY 10065
              Telephone: (212) 763-0060
              Facsimile: (646) 776-2600
              Email: sadeh@halpersadeh.com
                  zhalper@halpersadeh.com

*Counsel for Plaintiff*